STEVEN DUNBAR
Attorney at Law
104 South Main Street
Phillipsburg NJ 08865
NJ Supreme Court Id 017101993
Attorney for Plaintiffs
(908) 454-0074

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | \| | |
| | \| | Chapter 7 |
| **JERMAINE D. MORRISON** | \| | |
| | \| | Case No.16-26580-CMG |
| Debtor. | \| | |
| | \| | |
| **MICHAEL AVANT and CONSTANCE CLANTON** | \| | |
| Plaintiffs, | \| | |
| | \| | |
| -against- | \| | |
| | \| | Adversary Proceeding |
| **JERMAINE D. MORRISON,** | \| | No. |
| | \| | |
| Defendant. | \| | |
| | \| | |

## COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY AND OBJECTING TO DEBTOR'S DISCHARGE PURSUANT TO SECTIONS 523 AND 727 OF THE BANKRUPTCY CODE

Plaintiff-Creditor Michael Avant and Constance Clanton,  for their Complaint

against Defendant-Debtor Jermaine D. Morrison (the "Debtor"), respectfully alleges:

## JURISDICTION

1.  On August 29, 2016, the Debtor filed a voluntary petition (the "Petition") for relief under chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.

2. On September 27, 2016, the Debtor's duly-noticed meeting of creditors was held pursuant to Section 341(a) of the Bankruptcy Code (the "Section 341 Meeting").

3.  As of the date of this Complaint the Debtor has not been granted a discharge.

4.  This Complaint is timely because the date by which a Complaint objecting to the Debtor's discharge or to determine dischargeability of a debt expires on 4:00pm on November 28, 2016.

5. This is an adversary proceeding in which the plaintiff-creditor is objecting to the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A) and is seeking a determination as to the dischargeability of the debt owed by the Debtor to plaintiff under Bankruptcy Code § § 523(a)(2)(A), 523(a)(4), 523(a)(6).

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Code § § 523 and 727.

7. This case is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and 157(b)(2)(J).

## PARTIES and HISTORY

8. Plaintiffs are former business associates and maintain their principal residence at 930 Sussex Avenue, Bridgewater, New Jersey 08807.

9. Plaintiffs are judgment creditors of the Debtor.

10. Defendant is the Debtor in the above-captioned case and at all relevant times has resided at various addresses but states that he lives at 623 John Street, Plainfield, New Jersey 07060.

11. In 2005, the Plaintiffs met with their neighbor and long-time friend Asmi Hameed and her father, Syed Hameeduddin, after learning they planned to sell their home at 5 Monmouth Avenue, Bridgewater, NJ.

12.  The Plaintiffs made an oral agreement with Asmi Hameed and Syed Hameeduddin to purchase their home for $250,000.00.

13. The Plaintiffs intent at that time was to renovate the home and resell it in a short amount of time.

14. The Plaintiffs mentioned their intent to purchase, renovate and sell the real estate to their social acquaintance, the Debtor

15. The Debtor visited the Plaintiffs later to ask to join them as a partner in the real estate purchase and renovation project.

16. The Debtor made statements that inferred that he was a realtor and a highly placed employee with the Keller Williams Realty brokerage firm. He held himself to be a "Real Estate Consultant" which inferred a status greater than that of a mere real estate agent. The Defendants business cards list his position as "Real Estate Consultant" on a Keller Williams logo business card.

17. The Debtor claimed that his position with Keller Williams would allow him to obtain 100 % purchase money financing at an interest rate which would be better than any financing the Plaintiffs could obtain. Thus, his contribution to the partnership would be greater financial gain and transaction experience.

18. The Debtor then purchased the home in his own name by obtaining a mortgage loan in his name only. The plaintiff's did not understand that he intended to structure the transaction in solely his own name. The Defendant paid $257,500.00 for the real estate and took title in his own name. The Plaintiff's were not named as owners however they did pay mortgage payments.

19. The Plaintiff's had multiple conversations with the Defendant throughout the construction period requesting that their interest in the subject property be confirmed by adding their names to the Deed. The Defendant either changed the subject of the conversation or demurred saying it was too complicated or expensive to do so.

20.  During the initial discussions about forming a partnership to purchase and resell this real estate, the parties had an expectation that the Plaintiff's would provide the majority of the financing and physical labor. The Defendant would provide guidance and advice. The parties did not reach a specific apportionment of the profit however the Defendant stated that he saw himself as a minority stake holder.

21.  The parties reached an agreement in May of 2005 that they would apportion the net proceeds in three roughly equal parts. Michael Avant would receive 34% due to his initiation of the transaction. Constance Clanton and Jermaine Morrison would each receive 33%.

22.   The Plaintiffs then took out an equity loan on their home for $200,000 to pay for the demolition of the project home and construct a new home at 5 Monmouth Avenue, Bridgewater New Jersey.

24.  Substantially all of the labor to demolish the existing home was provided by Plaintiff's

25. Substantially all of the funds for the purchase of the modular home that was built on site were provided by the Plaintiff's.

26. Substantially all of the labor to build the new home was provided by the Plaintiff's.  Plaintiffs demolished the original home at 5 Monmouth Avenue, Bridgewater, NJ. Plaintiffs obtained all permits to start the demolition and set up of the new home. . Plaintiffs selected a modular home from Statewide Custom Modular Homes.

27.  As part of the Debtors contribution to the partnership, he agreed to cover the purchase money mortgage payments of the property during the construction period. Unfortunately, he later claimed that he could not afford to make payments and the Plaintiffs were forced to contribute $800.00 per month to maintain the mortgage while building the new one. Please note that these payments were made directly to the Defendant and not to the mortgage company.

28. When the Defendant was confronted about his actual failure to provide financial assistance or physical assistance for the project he promised to compensate the Plaintiffs from his real estate commission. The Plaintiff's did not understand that this promise amounted to an admission of the Defendant that he intended to "double dip" the partnership agreement.

29. The Plaintiff's relied on the Defendants self-proclaimed expertise. The Plaintiffs did not understand that the Defendant, as the titled owner of the real estate was intending to charge a real estate commission of $18,000.00 to himself, and the Plaintiffs' his business partners. He then intended to receive 33% of the remaining net profits as his compensation for his contribution to the partnership.

30. The project costs and construction delays exceeded the partnership budget. The Plaintiffs had to borrow $30,000.00 from their credit cards to keep the construction going. The Defendant said he could not contribute to the continuing costs.

31.  Once the house was close to completion, the Debtor professed his excitement to sell the building. He stated that he had at least five parties who were interested in purchasing. The Defendant asked for and received a key to the building so he could begin marketing the property.

32.  The Plaintiffs' asked the Debtor to list the house at $574,900.00 with the understanding that they were the majority stake holders and the Defendant would comply with their wishes.

33. The Plaintiffs' learned that the listing price of the house was improperly listed as $547,900.00. The Defendant never corrected this listing.

34. The Debtor outsourced the selling of the house to his friend, Barry Norman of Queen City Realty, without the Plaintiffs' knowledge or permission. In retrospect, this seemed odd because of the Defendants promise to share his real estate commission of $18,000.00 which could only have been accomplished if the Defendant were both the listing and purchasing real estate agent.

35. The Plaintiffs aver based on information and belief that the Defendant may not have had a valid Real Estate agents license despite his statements that he was a highly placed "Real Estate Consultant" with the Keller Williams brokerage.

36. The Debtor and Barry Norman of Queen City Realty decided to further drop the asking price of the home without the Plaintiffs' knowledge or approval.

37.  Once the property was listed for sale, the Debtor treated the real estate as his own property and disregarded the Plaintiff's requests for information and for adequate protection of their interest in the real estate. The Defendant declined to add the Plaintiffs to the existing deed or otherwise commemorate their partnership interest.

38.  When the Debtor finally obtained a purchase contract, he willfully failed to inform the Plaintiffs of the impending sale.

39. The Municipality advised Defendant that he could not obtain a Certificate of Occupancy for the building because the deed was in his name but all the construction permits were in the Plaintiff's names. He therefore went to the Municipality and had the permits changed into his name so that he could sell the building without recognizing the Plaintiff's ownership interests. He never told the Plaintiff's he was doing this. If had done so, the Plaintiffs would have been alerted to the pending sale.

40. The Plaintiff's were not even told that the building had been sold. The Plaintiffs stopped by the newly-constructed house after noticing the lights on in the building. They went to turn them off and were surprised to learn the house was sold and now occupied.

41. The Plaintiffs' attempted to retrieve the remaining supplies and equipment from the home's garbage, but the new homeowners explained that the Debtor took the equipment away in a truck.

42. The Plaintiff's immediately contacted the Defendant to confront him about the sale of the building without their knowledge or consent. They demanded their profits from the sale. The Debtor hung up on them and then refused to speak to them thereafter.

43. Debtor sold the house for $533,000.00 without the Plaintiffs' knowledge or consent and kept all of the proceeds of the sale.

44. The Plaintiffs never received payment for the construction of the new home at 5 Monmouth Avenue, Bridgewater, NJ.

45.  The Plaintiff's filed a Civil Suit against the Defendant for multiple theories of Fraud and Defalcation of his fiduciary duties. (Exhibit A)

46.  A  judgment for $200,000.00 was entered against the Debtor on February 2009. (Exhibit B)

47. The Plaintiff's pursued numerous remedies, including a Mechanics Lien on the property at 5 Monmouth Ave. in Bridgewater and liens on his real estate in Phillipsburg New Jersey and Edison New Jersey. The Defendant transferred his Bound Brook New Jersey real estate into the name of a female associate before the Judgment was docketed.

48. The Defendant thereafter stopped paying the mortgages on the Phillipsburg and Edison properties and allowed them to go into foreclosure.

## COUNT 1

## NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(2) OF THE BANKRUPTCY CODE

49. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 48 of this Complaint as if set forth at length herein.

50. Bankruptcy Code § 523(a)(2)(A) provides, in relevant part, that: (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not

discharge an individual debtor from any debt-- (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by -- (A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

51. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, that was obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § § 523(a)(2)(A).

52. The Plaintiffs aver that the Defendant held himself out as an expert in the field of Real Estate sales.

53. The Plaintiffs aver that the Defendant sought out the Plaintiff's and interjected himself into their business dealings with the intent of profiting from the Plaintiff's business opportunity.

54. The Plaintiffs aver that the Defendant took advantage of the Plaintiff's by declining to enter into a written partnership agreement, by purchasing the subject real estate in his own name, by declining to commemorate the Plaintiffs ownership interest in the real estate and by disposing of the real estate in a manner he solely controlled thus usurping the Plaintiff's legitimate expectations and business interests.

55. The Plaintiffs aver that their contributions of physical work, entrepreneurial effort and contributions of building materials together with direct monetary payments evidence beyond any reasonable doubt that the parties formed a partnership to build a building and sell it.

56. The Plaintiffs aver that the Defendants conduct can not be classified as a simple failure to repay a loan but evidences a willful intent to deceive the Plaintiffs and deprive them of the partnership and contractual interests.

57. The Plaintiffs aver that the Defendant's conduct evidences a breach of his fiduciary duty to recompense the Plaintiff's for their monetary contribution to the purchase, rebuilding and sale of the subject real estate.

**WHEREFORE**, The Plaintiffs pray this Honorable Court to enter an Order denying the discharge of the Defendants debt and judgment to the Plaintiffs and for Attorney fees, costs of suit and such further and other relief as my be allowed.

## COUNT II

## NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION 523(a)(4) OF THE BANKRUPTCY CODE

58. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 57 of this Complaint as if set forth at length herein.

59. Bankruptcy Code § 523(a)(4) provides, in relevant part, that: (a) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt— . . . (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . . .

60. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for fraud or defalcation while

acting in a fiduciary capacity, embezzlement, or larceny within the meaning of

Bankruptcy Code § 523(a)(6).

61. The Defendant sought out the Plaintiffs after he purchased the property in his

own name and told them that he could not afford to pay the mortgage payments on the

subject real estate.

62. The Plaintiffs paid to the Defendant $800.00 per month during the

construction phase of the project. This money was delivered to the Defendant with the

express understanding that he would combine those funds with his own and make

mortgage payments. The Plaintiffs aver that they understood that the sale of the

building would result in their being refunded their proportionate share of the mortgage

principle reduction through their partnership share of the profits generated on the sale.

63. The Defendant kept and retained all of the funds. Whether he actually paid

the mortgage or not, he effectively received all of the Plaintiff's funds by lying to them

and stating that he was making mortgage payments and by lying to them and stating

that he would split the sales proceeds with them.

64. The Defendant induced the Plaintiff's to incur debt by taking a mortgage on

their personal home to obtain the funds necessary to reconstruct the Monmouth Avenue

property. The Defendant specifically offered as part of his "expertise", information on

how to obtain said financing and directed that they incur the debt as part of the

partnership agreement.

65. The Defendant induced the Plaintiff's to expend this money on the purchase

of the materials and labor necessary to build the home on the Monmouth Avenue lot.

66. The Defendant induced the Plaintiffs to entrust him with the benefit of their physical labor, entrepreneurial effort, materials contribution and financial contribution as his "expertise" would be used to obtain maximum benefit from their combined efforts.

67. The Plaintiff's aver that the Defendant knew that purchasing the home in his sole name would give him sole legal title and thus his decision to do so was evidence of his intent to deprive the Plaintiffs of their contributions.

68. The Plaintiff's aver that the Defendant willfully refused to add their names to the Deed for the Monmouth Avenue property not because of titling issues but by doing so, he could deprive the Plaintiffs of their profit at the sale closing table.

69. The Plaintiffs aver that the Defendant knowingly and intentionally deprived them of information concerning the sales offers and sales contract for the property with the willful intent of taking all the profit for himself and harming the Plaintiffs with a mortgage placed on their home which they could not repay.

70. The Plaintiffs aver that the Defendant's conduct in selling the property and immediately refusing to pay the debt the Plaintiff's incurred is evidence of his intent to steal their monetary contribution to the property project from the beginning of the partnership.

71. The Plaintiffs aver that the Defendant's conduct in selling the property and immediately refusing to pay them their partnership interest evidences his intent to steal their partnership profit from the property project

**WHEREFORE**, The Plaintiffs pray this Honorable Court to enter an Order denying the discharge of the Defendants debt and judgment to the Plaintiffs and for Attorney fees, costs of suit and such further and other relief as my be allowed.

## COUNT III

## NON-DISCHARGEABILITY OF PLAINTIFF'S JUDGMENT UNDER SECTION

## 523(a)(6) OF THE BANKRUPTCY CODE

72. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 71 of this Complaint as if set forth at length herein.

73. Bankruptcy Code § 523(a)(6) provides, in relevant part, that: (b) A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt— . . . (6) or willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

74. All or part of the debt owed to plaintiff, as evidenced by the Judgment entered against the Debtor, is non-dischargeable as it is a debt for willful and malicious injury caused by the Debtor within the meaning of Bankruptcy Code § 523(a)(6).

75. The Plaintiff's aver that the Defendant holds himself out as a "Real Estate Consultant" and that he promotes himself to the public as a business man who is fabulously wealthy due to his dealing in real estate.

76. The Plaintiff's aver that the Defendant's knew that he was going to steal all of the profit from this transaction when he initially interjected himself into the contract. The Plaintiff's aver that the Defendant knew when he recommended to them that they finance this project through a mortgage on their home that they would be left with a claim against their home which jeopardized their place to live as well as leaving them indebted for the profits he was stealing.

**WHEREFORE**, The Plaintiffs pray this Honorable Court to enter an Order denying the discharge of the Defendants debt and judgment to the Plaintiffs and for Attorney fees, costs of suit and such further and other relief as my be allowed.

## COUNT IV

## OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(3) OF THE BANKRUPTCY CODE

77. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 76 of this Complaint as if set forth at length herein.

78. Bankruptcy Code § § 727(a)(3) provides that: (a) The court shall grant the debtor a discharge, unless . . . (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and 11 papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

79. Plaintiffs have discovered that Debtor started using aliases such as "Mister Real Estate", "Jefe Maine" and "Jay Morrison" to conduct his day-to-day business.

80. Debtor's Bankruptcy Petition at question 4 states that the Debtor has not been in business or used a business name in the preceeding eight years. That is a lie. Question 12 of the Petition states that the Debtor is not a sole proprietor and does not operate any business. That is a lie.

81. Plaintiffs learned that the Debtor, Jermain "Jay" Morrison, holds himself out to the public  as the Chief Executive Officer and founder of several "for profit" companies

and at least one supposedly "not for profit" organizations. All of these companies were

owned and operated prior to the date of the Defendant's Bankruptcy petition but do not

appear anywhere in the petition as an asset or possession of the Defendant.

82. The Defendant owns  Morrison Holdings, LLC. The Defendants Bankruptcy

Petition does not list Morrison Holdings LLC as any type of business entity in which he

has an ownership interest. He does claim on Schedule I of his petition that he is

employed by Morrison Holdings as a "Manager" and that he receives $2,000.00 per

month on which no withholding taxes are deducted. However, the Defendant's website

jaymorrison.net lists Morrison Holdings LLC as the company the Defendant owns and

the place for real estate investors to contact him. The New Jersey Department of

Treasury lists the Defendant as the Manager of the Company and his younger brother

as the registered agent.

83. The Defendant also claims to be the Founder of "Young Minds Can LLC"

which he promotes as a "not for profit" company but may be a "for profit" company

selling school children uniforms. The Defendant is listed as a Manager or Member

together with his other company Morrison Holdings LLC. This company does not appear

on the Debtors bankruptcy petition as either a company he owns, controls, works for or

has any business interest in.

84. The Defendant owns "Jay Morrison Academy LLC" which can be found on

the internet at jaymorrisonacademy.com. This company purportedly allows persons to

be trained with Jermaine "Jay" Morrison's in depth knowledge of real estate investment

and development for a fee. This company is owned by Jermaine Morrison.  Neither the

business "Jay Morrison Academy" nor the website jaymorrisionacademy.com are listed

in the Defendants bankruptcy petition.

85. The Defendant owns "Jay Morrison Real Estate Partners Limited Liability

Company". Jermaine "Jay" Morrision Real Estate Partners can be found on the internet

at jmrepartners.com.  This company was set up in 2014 during a year which the

Defendant supposedly had no income. The company is owned by Morrison Holdings

LLC. The Defendant did not list an ownership interest in Jay Morrison Real Estate

Partners LLC neither did he list his asset which is the website jmrepartners.com.

86. Plaintiffs discovered that the Debtor wrote and published 3 books currently

being sold on Amazon.com and on his Jay Morrison Academy and personal

(jaymorrison.net) websites.

87. The Debtor's books are "Hip Hop 2 Homeowners", "The Solution", and "Lord

of My Land". These books were written, published and sold prior to the Defendants filing

for relief in Bankruptcy on August 29th, 2016.

88. The Defendant does not list his ownership interest in the three published

books that he owns, anywhere in his bankruptcy petition. Thus he has denied the

Trustee and the Plaintiff's the ability to assess the value of those assets and recover

their value.

89. The Debtor also sells tee-shirts for $24.99 on his "jaymorrison.net" website. It

is unknown whether the Defendant owns any trademark or copyright on the tee shirts or

their designs but there is no mention of such copyright or trademark in the Defendants

bankruptcy petition.

90.    The Debtor, now going as "Jay Morrison", has been holding financial and real estate conference events in which he charges between $30.00 and $297.00 to each individual to participate. It seems that these "conferences" would be outside the job description of a "manager" and thus raises a legitimate question of the Defendants honesty and truthfulness.

91. The Debtor, in his operation of his various businesses, including Morrison Holdings LLC and Jay Morrision Academy LLC, Jay Morrison Real Estate Partners LLC and Young Minds Can, LLC, concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained.

92. The Defendant states that he has legal or equitable interest in real estate on Question 1 of Schedule A but he does not list the property address or any value for said interest.  By virtue of the foregoing, the Debtor's discharge should be denied under Bankruptcy Code § 727(a)(3).

**WHEREFORE,** plaintiff respectfully requests that this Court enter a Judgment determining that the debt reflected in the Judgment entered in favor of plaintiff against the Debtor on February 9, 2009, is non-dischargeable under Bankruptcy Code § § 523(a)(2)(A), 523(a)(4), and 523(a)6) or, in the alternative, denying the Debtor's discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A), and granting plaintiff such other and further relief as this Court may deem just and proper.

## COUNT V

## OBJECTION TO DEBTOR'S DISCHARGE UNDER SECTION 727(a)(4)(A) OF THE BANKRUPTCY CODE

93. Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 92 of this Complaint as if set forth at length herein.

94. Bankruptcy Code § 727(a)(4)(A) provides that: (a) The court shall grant the debtor a discharge, unless --- (4) the debtor knowingly and fraudulently, in or in connection with the case -- (A) made a false oath or account

95. The debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he represented in the Statement of Financial Affairs attached to his Petition that his income from employment or operation of business in 2015 was $0.00 dollars. But he reports that in 2016, the company he owns (Morrision Holdings LLC) paid him $2,000.00 per month consistently

96. The debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he represented in the Statement of Financial Affairs attached to his Petition that his income from employment or operation of business in 2014 was $0.00 when in fact his actual income was much greater. The Defendant owned five separate companies and he falsely claims that he received no income from any of them.

97. The debtor knowingly and fraudulently, in or in connection with the case, made a false oath or account, in that he failed in the Statement of Financial Affairs attached to his Petition to provide required information about the nature, names, taxpayer identification numbers, locations, and beginning and end dates of all businesses in which the Debtor was an officer, director, partner or managing executive

of a corporation, partner in a partnership, sole proprietor, or was self-employed in a

trade, profession or other activity either full or part-time within six years immediately

preceding the commencement of the case.

98. By virtue of the Debtor's false representations and omissions, and the oath

he took concerning the veracity of his submissions, the Debtor's discharge should be

denied under Bankruptcy Code § 727(a)(4)(A). 13

**WHEREFORE,** plaintiff respectfully requests that this Court enter a Judgment

determining that the debt reflected in the Judgment entered in favor of plaintiff against

the Debtor on February 9, 2009, is non-dischargeable under Bankruptcy Code § §

523(a)(2)(A), 523(a)(4), and 523(a)6) or, in the alternative, denying the Debtor's

discharge under Bankruptcy Code § § 727(a)(3) and 727(a)(4)(A), and granting plaintiff

such other and further relief as this Court may deem just and proper.

Dated: November 27, 2016                    /s/ *Steven Dunbar, Esq.*
                                            Steven Dunbar, Esq
                                            Attorney at Law
                                            Attorney for Plaintiff's
                                            104 South Main Street
                                            Phillipsburg NJ 08865
                                            Supreme Court Id. 017101993
                                            (908) 454-0074